[Cite as *Easter v. Sobol*, 2025-Ohio-3004.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JACQUELINE R. EASTER EXECUTOR OF ESTATE OF GENOIS EASTER DECEASE ET AL. | : : : : | C.A. No. 30351 |
| Appellants | : : | Trial Court Case No. 2024 CV 02142 |
| v. | : : | Civil Appeal from Common Pleas Court |
| TODD SOBOL MD ET AL. | : : | **FINAL JUDGMENT ENTRY & OPINION** |
| Appellees | | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 22, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
MICHAEL L. TUCKER, JUDGE


LEWIS, J., and HUFFMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30351


JONATHAN HOLLINGSWORTH and AARON G. DURDEN, Attorneys for Appellants
BRIANNA M. PRISLIPSKY, SHANNON K. BOCKELMAN, and MICHAEL D. RICE,
Attorneys for Appellees


TUCKER, J.

{¶ 1} Appellants Jacqueline R. Easter, individually and as executor of the estate of Genois Easter, Chelsea Easter, and Rachael Easter appeal from the trial court's entry of summary judgment for appellees Todd Sobol, M.D., and Kettering Health on the appellants' complaint alleging wrongful death and other malpractice-related causes of action.

{¶ 2} The appellants challenge the trial court's conclusion that their wrongful death claim was barred by collateral estoppel. They also contend the trial court erred in finding that Genois Easter lacked a cause of action at the time of his death, meaning that they had no viable wrongful death claim, either. Finally, the appellants assert that the trial court erred in finding their claim for negligent hiring, training, or supervision was time-barred.

{¶ 3} We conclude that the wrongful death claim was barred by collateral estoppel and that the claim for negligent hiring, training, or supervision was barred by the applicable statute of limitations. Accordingly, the trial court's judgment is affirmed.

## I. Background

{¶ 4} In June 2022, husband and wife Genois and Jacqueline Easter filed a lawsuit against Todd Sobol, M.D., and Kettering Health in Mont. C.P. No. 2022 CV 02694. Their complaint included a medical malpractice claim by Genois and a loss-of-consortium claim by Jacqueline.[1] It also contained a subrogation claim involving a third defendant, Highmark

---

[1] For clarity, we refer to the Easters by their first names.

Blue Shield. In January 2024, Jacqueline filed a notice of suggestion of death, advising the trial court that Genois had died. Thereafter, in March 2024, the trial court entered summary judgment in favor of Dr. Sobol and Kettering Health based on the failure of the Easters' expert to opine on causation. More than two months after the trial court's filing of a notice of a final appealable order in relation to the summary judgment decision, the Easters' counsel filed a notice of voluntary dismissal without prejudice under Civ.R. 41(A). A cost statement was filed, and no further action occurred in the case.

{¶ 5} In April 2024, Jacqueline Easter filed the above-captioned lawsuit acting individually and as executor of Genois' estate. Jacqueline was joined by Chelsea Easter and Rachael Easter, who along with Jacqueline were heirs and beneficiaries of the estate. The complaint included a survivorship claim brought by the estate, a wrongful death claim brought by the individual plaintiffs, a negligent hiring, training, or supervision claim brought by the estate and the individual plaintiffs, a vicarious liability or agency by estoppel claim brought by "Plaintiffs," and a claim to determine Highmark Blue Shield's subrogation rights.

{¶ 6} In August 2024, Dr. Sobol and Kettering Health moved for summary judgment. They argued that the negligent hiring, training, or supervision claim was time-barred. They asserted that the other claims were grounded in the same medical negligence alleged in Genois and Jacqueline's prior lawsuit. The defendants reasoned that the trial court's entry of summary judgment in the prior lawsuit had preclusive effect and entitled them to summary judgment on the claims for survivorship, wrongful death, and vicarious liability or agency by estoppel based on collateral estoppel and res judicata. The trial court agreed.

{¶ 7} On December 9, 2024, the trial court entered summary judgment against the plaintiffs on all counts. It found the negligent hiring, training, and supervision claim barred

by the two-year statute of limitations. It concluded that the other claims were precluded by collateral estoppel and res judicata, reasoning:

> Here, as Defendants correctly asserted, this Court issued a valid, final judgment, granting Defendants' *Motion for Summary Judgment*, <u>in its entirety</u>, on March 6, 2024 in Case No. 2022 CV 02694. Further, Plaintiffs' claims for wrongful death, survivorship, and vicarious liability/agency by estoppel are all dependent upon Dr. Sobol's alleged negligence. However, this Court already determined that Plaintiffs failed to establish a causal link between any alleged negligence on the part of Dr. Sobol and the resulting injuries, and granted summary judgment in favor of Defendants as a matter of law. Although Plaintiffs now assert that this determination was merely an "evidentiary ruling" as to the insufficiency of Plaintiffs' affidavit in support of their motion, the Court finds that this is a mischaracterization of its Decision in the prior case. Rather, this Court's previous determination that Plaintiffs could not establish the element of causation was based on a detailed review of Dr. Gallagher's affidavit, as well as his deposition testimony, during which he specifically declined to give an opinion on causation.

December 9, 2024 Decision, Order, and Entry p. 5-6.

{¶ 8} The trial court indicated that it previously had considered all evidence and testimony regarding Genois' and Jacqueline's medical malpractice and loss-of-consortium claims and had entered a valid, final judgment on the merits. The trial court noted that there was no appeal in the prior case and no effort to vacate the judgment under Civ.R. 60(B). The trial court further noted the attempt to voluntarily dismiss the claims in the prior case after judgment was rendered in the defendants' favor. The trial court concluded "that

Plaintiffs' claims for wrongful death, survivorship, and vicarious liability/agency by estoppel were barred by the doctrines of res judicata and collateral estoppel." *Id*. at p. 6.

{¶ 9} As for the wrongful death claim, the trial court considered that the wrongful death statute required Genois Easter to have a cause of action against Dr. Sobol at the time of his death. The trial court noted its judgment for the defendants in the prior case arose from the plaintiffs' failure "to establish that Dr. Sobol's alleged medical negligence caused the injuries at issue." *Id*. at p. 7. The trial court reasoned that "[i]rrespective of when the Court's Decision granting summary judgment was filed, the evidence upon which the Court based its decision did not change following Mr. Easter's death." *Id*. The trial court found that the wrongful death claim failed for this reason as well.

{¶ 10} Jacqueline Easter timely appealed, individually and as executor of the estate of Genois Easter, along with Chelsea Easter and Rachael Easter. They advance three assignments of error.

## II. Analysis

{¶ 11} Before turning to the appellants' assignments of error, we must address a threshold issue. The appellants' reply brief includes a motion to strike a portion of the appellees' brief. The appellants contend part of the appellees' brief improperly seeks affirmance based on alternative grounds not raised below or addressed by the trial court, namely the appellants' alleged non-compliance with Civ.R. 26(B)(7) governing the disclosure of expert testimony. The appellants assert that the appellees did not argue Civ.R. 26(B)(7) in their summary judgment motion and that the trial court did not address the rule. They ask us to strike the portion of the appellees' brief that discusses Civ.R. 26(B)(7).

{¶ 12} We overrule the motion to strike. As we explain below, the trial court properly entered summary judgment for reasons unrelated to Civ.R. 26(B)(7). We need not consider

whether it alternatively could have entered summary judgment based on non-compliance with the rule, and we see no reason to strike the portion of the appellees' brief addressing the issue. Having resolved the motion to strike, we turn to the merits of the appeal.

{¶ 13} The appellants' first assignment of error states:

**The Common Pleas Court erred when it concluded that each of Plaintiffs' claims was barred by the doctrines of res judicata and collateral estoppel, and on that basis concluded that Defendants were entitled to a judgment as a matter of law with respect to each of Plaintiff's claims.**

{¶ 14} The appellants argue that the judgment against Genois and Jacqueline Easter in Mont. C.P. No. 2022 CV 02694 had no preclusive effect on their wrongful death claim in the present case for two reasons. First, they assert that the earlier judgment was void. They maintain that Genois' death and the filing of a suggestion of death deprived the trial court of jurisdiction to enter a judgment absent an appearance by a representative of Genois' estate, which did not occur. Second, they contend the issues in the present case are different. The appellants reason that the issue in the 2022 case was an evidentiary one concerning whether to strike an affidavit. According to the appellants, the issue in the present case is whether the evidence established a causal link between Dr. Sobol's conduct and Genois' death.

{¶ 15} Upon review, we find both arguments to be unpersuasive. Regarding the trial court's jurisdiction to enter a judgment in the 2022 case, we recognize that "[t]he filing of a suggestion of death abates the trial court's personal jurisdiction over the deceased party." (Citations omitted.) *Dolin v. Lupo*, 2023-Ohio-3074, ¶ 20 (10th Dist.). "[T]he effect of a filed suggestion of death is that personal jurisdiction over that party is temporarily abated and the

court is without authority to take any action with respect to the party-decedent's interest until a proper substitution of parties is made, service is obtained, and personal jurisdiction is regained." *Smith v. Bond*, 2015-Ohio-2585, ¶ 8 (7th Dist.). Where a trial court lacks personal jurisdiction over a party, any judgment for or against that party is void. *Skouri v. Skouri*, 2025-Ohio-769, ¶ 13 (2d Dist.), citing *Bakhtiar v. Saghafi*, 2018-Ohio-3796, ¶ 19 (8th Dist.). "[A] void judgment cannot be res judicata." *Id*.

{¶ 16} In the 2022 case, Jacqueline filed a notice of suggestion of death, advising the trial court that Genois had died. Without a representative of his estate being substituted as a party, the trial court proceeded to enter summary judgment for Dr. Sobol and Kettering Health. As to Genois' medical-malpractice claim, that judgment was void ab initio and had no preclusive effect.[2] We reach a different conclusion, however, regarding Jacqueline's loss-of-consortium claim. Although her claim was derivative of Genois' malpractice claim, it was "a distinct cause of action brought by a different party[.]" *Perry v. Eagle-Picher Industries, Inc.*, 52 Ohio St.3d 168, 169 (1990). "In a case with two (or more) plaintiffs, one of whom has died, only the decedent's claims should be affected by the failure to substitute the decedent's personal representative." *Id*. Despite its status as a derivative cause of action, Jacqueline's consortium claim remained viable in the 2022 case notwithstanding

---

[2] The appellees cite case law for the proposition that a motion to vacate is the proper way to challenge a judgment that allegedly is void due to a lack of personal jurisdiction. Absent such a motion, the appellees suggest that even a potentially void judgment is entitled to preclusive effect. Here, however, there is no question that the judgment against Genois was entered without personal jurisdiction given that he was deceased when it was entered. A judgment against a deceased person is a "nullity in the absence of a proper substitution of a party." *Jones v. Jones*, 2023-Ohio-989, ¶ 12 (11th Dist.). Such a judgment is against "nobody" and is "simply void." *Third Fed. S. & L. Assn. of Cleveland v. Doles*, 2014-Ohio-5181, ¶ 16 (11th Dist.); *see also CitiMortgage, Inc. v. Bumphus*, 2011-Ohio-4858, ¶ 26 (6th Dist.) (recognizing that a judgment entered against a deceased person is "void ab initio"). A judgment against nobody logically cannot have preclusive effect even if there was no motion to vacate it.

Genois' death. *Id*; *see also McCarthy v. Lee*, 2023-Ohio-4696, ¶ 17 (citing *Perry* and observing that a loss-of-consortium claim survives when a principal claim fails for non-substantive reasons). The summary judgment in the 2022 case was valid and final as to Jacqueline.

{¶ 17} In reaching the foregoing conclusion, we considered the possibility that the summary judgment decision was interlocutory because it disposed of Jacqueline's consortium claim but had no effect on the malpractice claim filed by Genois, over whom the trial court lacked jurisdiction after his death. As noted above, the Easters' counsel eventually filed a notice of voluntary dismissal in the 2022 case, purporting to dismiss it entirely. Although the dismissal formally may have disposed of any potential claim by Genois' estate, it had no effect on the trial court's earlier entry of summary judgment against Jacqueline on her consortium claim. Notably, the summary judgment decision contained a Civ.R. 54(B) certification, meaning that it was final when journalized as to Jacqueline's claim.

{¶ 18} The remaining question is whether the trial court's entry of summary judgment against Jacqueline had preclusive effect in this case. The appellants argue that collateral estoppel did not apply because the issues in the two cases were different. Again, we disagree. The trial court entered summary judgment in the 2022 case based on the Easters' failure to present expert testimony establishing that medical negligence caused Genois' injury, which involved his diagnosis with metastatic prostate cancer. In finding no causation evidence, the trial court noted that the Easters' expert, Dr. Thomas Gallagher, stated during his deposition that he would not be opining on causation. Considering Dr. Gallagher's unequivocal deposition testimony, the trial court struck a contradictory affidavit by the doctor offered by the Easters after the close of discovery in response to the defendants' summary

judgment motion. Without the affidavit, the trial court found the defendants entitled to judgment as a matter of law.

{¶ 19} In the present case, the appellants' wrongful death claim requires evidence that medical negligence caused Genois' death from prostate cancer. *See Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). In the 2022 case, the trial court entered summary judgment against Jacqueline based on a lack of evidence that medical negligence caused Genois' injury—his alleged untimely diagnosis with advanced prostate cancer. In our view, collateral estoppel applies because the two cases involved an identical threshold causation issue. Jacqueline's inability in the prior case to establish that negligence caused Genois' late diagnosis with terminal prostate cancer necessarily precludes her from establishing such negligence caused his death from the same cancer. Absent evidence that negligence caused Genois' *injury*, Jacqueline cannot possibly prove that negligence caused his *death* where he allegedly died from that injury.

{¶ 20} In opposition to our conclusion, the appellants cite *Thompson*. They point out that the Ohio Supreme Court refused to apply collateral estoppel to the issue of causation in *Thompson*, which also involved a medical malpractice action followed by a wrongful death case. *Thompson* stemmed from a malpractice claim filed by Susan Allen against several defendants alleging negligence related to a delayed diagnosis of breast cancer. During her lifetime, Allen recovered a judgment on her claim, but she later died, allegedly because of the same conduct that gave rise to the malpractice claim. Elizabeth Thompson, a representative of Allen's estate, filed a wrongful death action against the same defendants.

{¶ 21} At issue in *Thompson* was whether collateral estoppel applied to the "causation" element of the wrongful death claim. The Ohio Supreme Court found that it made

little difference whether medical negligence had caused Allen some physical harm or injury prior to her death. The Ohio Supreme Court reasoned:

> The primary issue in the present wrongful death action is whether appellants' neglect proximately caused Allen's *death*, and this issue has not yet been determined. It is not enough that a similar issue, one addressing physical injury instead of death, was litigated and decided in Allen's medical malpractice action. For collateral estoppel to bar the relitigation of an issue, precisely the *same* issue must have previously been litigated and decided.

(Emphasis in original.) *Thompson*, 70 Ohio St.3d at 185.

{¶ 22} Even if the defendants' negligence had injured Allen prior to her death, whether their negligence later caused her death raised a different issue that had not been litigated. It is entirely possible for a doctor to commit malpractice by missing an early cancer diagnosis, thereby causing a compensable injury, but for the patient later to die from some other cause. Here, however, Jacqueline failed to establish in the malpractice and loss-of-consortium action that medical negligence caused Genois' late-stage prostate cancer diagnosis. That being so, she logically cannot now establish that medical negligence caused his death from late-stage prostate cancer.

{¶ 23} The appellants also contend collateral estoppel does not apply because the 2022 case involved an evidentiary ruling on a motion to strike an affidavit. The trial court correctly rejected this argument. The trial court entered summary judgment in the 2022 case based on the Easters' failure to provide causation evidence linking Genois' injury to medical negligence. The plaintiffs' expert, Dr. Gallagher, stated during his deposition that he would not opine on causation. Following the close of discovery, the doctor gave a contradictory account in an affidavit the Easters offered in support of their opposition to summary

judgment, which the trial court refused to consider. Without the affidavit, the plaintiffs lacked a required expert opinion on causation. Although the evidentiary ruling obviously impacted the trial court's judgment, the fact remains that the trial court entered summary judgment based on a lack of evidence of causation. For the reasons set forth above, we conclude that the present case involves the same issue and that collateral estoppel applies.

{¶ 24} Although the appellants do not specifically address the issue, we also note that Jacqueline was a party to the prior malpractice and loss-of-consortium action, but the other wrongful death beneficiaries, appellants Chelsea Easter and Rachael Easter, were not. For collateral estoppel to preclude Chelsea and Rachael from relitigating causation, privity must exist between them and Jacqueline.

{¶ 25} In *Thompson*, the Ohio Supreme Court held that the wrongful death beneficiaries were in privity with decedent Allen, who had filed the malpractice action prior to her death. The Ohio Supreme Court reasoned:

> As a general matter, privity "is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." *Bruszewski v. United States* (C.A.3, 1950), 181 F.2d 419, 423 (Goodrich, J., concurring). We believe the beneficiaries' relationship with the decedent is close enough to conclude that the beneficiaries are in privity with the decedent. The Restatement of Judgments 2d, *supra*, holds essentially the same view. Section 46(3) of the Restatement states:
>
> > "Issues determined by a judgment for or against a person in an action based on an act which later causes his death are conclusive in a subsequent action for causing his death."

The Restatement recognizes that there is a close alignment of interests between the beneficiaries and the decedent. The decedent has every incentive to vigorously pursue a claim for personal injury or medical malpractice. Upon the decedent's death, the beneficiaries may reasonably expect to be bound by the determination of issues that were litigated in the earlier action, issues, concerning, for example, duty, breach of duty, and proximate cause. Moreover, allowing such issues to be relitigated in a wrongful death action could result in inconsistent decisions, with the defendant found liable in one action and not the other. Such a result would not further confidence in our judicial system. For these reasons, we hold that the beneficiaries in a wrongful death action are in privity with the decedent.

*Thompson*, 70 Ohio St.3d at 184.

{¶ 26} In the present case, the question is whether Chelsea and Rachael Easter were in privity with Jacqueline, not with decedent Genois. But *Thompson* remains applicable. Jacqueline was in privity with Genois, her husband. The malpractice judgment against him was void because he died before it was entered. If Genois had not died before the entry of summary judgment, *Thompson* would compel a finding of privity between him and the wrongful death beneficiaries.

{¶ 27} As noted above, the judgment against Jacqueline on her derivative loss-of-consortium claim was valid and final. Jacqueline was identically situated to Genois in the prior action. The alignment of interests between Jacqueline and the other wrongful death beneficiaries was as strong as the alignment that existed between the beneficiaries and the decedent in *Thompson*. Like Genois, Jacqueline had every incentive vigorously to pursue a loss-of-consortium claim derived from her husband's malpractice claim. As a result, Chelsea

and Rachael, the other wrongful death beneficiaries, reasonably may expect to be bound by the determination of issues that were litigated in the earlier action, including the lack of causation evidence. Allowing this issue to be relitigated in the wrongful death action could result in inconsistent decisions—even within the wrongful death action itself, as Jacqueline could not prevail as a statutory beneficiary due to the prior judgment against her, whereas Chelsea and Rachael potentially could prevail. Such a result would not further confidence in our judicial system.

{¶ 28} For the foregoing reasons, we conclude that the wrongful death beneficiaries in the present case were in privity with Jacqueline for purposes of the loss-of-consortium judgment against her. Because privity existed between Jacqueline and the other wrongful death beneficiaries, the appellants all were collaterally estopped from relitigating the causation issue that was decided against Jacqueline in the malpractice and loss-of-consortium action.

{¶ 29} Finally, though the appellants' first assignment of error is directed at the trial court's application of collateral estoppel as to "each of Plaintiffs' claims," their appeal is focused on the wrongful death claim. The trial court had found appellants' survivorship and vicarious liability claims were barred by collateral estoppel, too. Nonetheless, our analysis remains the same. The other two claims involved the same fundamental question as the wrongful death claim—whether Genois' allegedly delayed cancer diagnosis was the result of medical negligence. The trial court's resolution of this issue in the Easters' 2022 suit precludes relitigating the issue under any of the claims brought by the appellants in their present suit. The first assignment of error is overruled.

{¶ 30} The second assignment of error states:

**The Common Pleas Court erred when it concluded that Mr. Easter did not have a cause of action against Defendants at the time of his death, and on that basis concluded that Defendants were entitled to a judgment as a matter of law with respect to the wrongful death claim.**

{¶ 31} The appellants contend the trial court erred in finding that Genois lacked a viable malpractice claim at the time of his death and consequently determining that they lacked a wrongful death claim.

{¶ 32} The trial court cited its summary judgment ruling in the 2022 case based on a lack of causation evidence. It then referenced the wrongful death statute, R.C. 2125.01, which provides in part: "When the death of a person is caused by wrongful act, neglect, or default *which would have entitled the party injured to maintain an action and recover damages if death had not ensued*, the person who would have been liable if death had not ensued . . . shall be liable to an action for damages, notwithstanding the death of the person injured[.]" (Emphasis added.) Given the absence of evidence on causation in the malpractice and loss-of-consortium case, the trial court reasoned that Genois' death was not caused by an act that would have entitled him to maintain an action for damages if he had not died. Therefore, the trial court determined that the appellants could not pursue a wrongful death claim.

{¶ 33} Having found that collateral estoppel entitled the appellees to summary judgment on the wrongful death claim, we need not decide whether the claim also was barred by R.C. 2125.01. The second assignment of error is overruled as moot.

{¶ 34} The third assignment of error states:

**The Common Pleas Court erred when it concluded that Plaintiffs' claim for negligent hiring/training/supervision accrued on an unspecified**

**date prior to Mr. Easter's death and more than two years prior to the filing of Plaintiffs' complaint, and on that basis concluded that Plaintiffs' claim for negligent hiring/training/supervision was barred by the applicable statute of limitations and that Defendants were entitled to a judgment as a matter of law with respect to that claim.**

{¶ 35} The appellants contend the trial court erred in finding their negligent hiring, training, or supervision claim against Kettering Health was time barred. Their only argument is that the applicable two-year statute of limitation could not have commenced until Genois died. They reason that all their claims—including the one against Kettering Health for negligent hiring, training, or supervision—depended on Genois' death and thus could not have accrued prior to January 18, 2024, when he passed away. Because appellants filed their complaint within two years of Genois' death, they assert that the negligent hiring, training, or supervision claim was not time barred.

{¶ 36} We find the appellants' argument to be unpersuasive. Their negligent hiring, training, or supervision claim was subject to a two-year statute of limitation with a discovery rule. *New Wembley, LLC v. Klar*, 2022-Ohio-4250, ¶ 15-16 (11th Dist.). Accordingly, the appellants' cause of action accrued when Genois knew or by the exercise of reasonable diligence should have known that he had been injured by Kettering Health's conduct. *Id*. at ¶ 21. In the proceedings below, the appellees argued that the negligent hiring, training, or supervision claim accrued no later than November 24, 2021, when a specialist diagnosed Genois with metastatic prostate cancer. In entering summary judgment against the appellants, the trial court opined that the cause of action was grounded in essentially the same evidence and facts as the prior medical-malpractice and loss-of-consortium lawsuit that Genois and Jacqueline filed in June 2022.

**{¶ 37}** The appellants do not directly address this issue. Instead, they argue more broadly that the statute of limitations on the negligent hiring, training, or supervision claim could not have commenced until Genois died. The appellants analogize to their wrongful death claim, reasoning that all their claims depended on Genois' death and did not accrue until he passed away.

**{¶ 38}** This argument lacks merit. We agree with the appellees that Genois' negligent hiring, training, or supervision claim accrued on November 24, 2021, when another doctor diagnosed him with metastatic prostate cancer. Although a wrongful death claim certainly requires a decedent, that is not true of a negligent hiring, training, or supervision claim. Even if he had not died, Genois could have pursued a negligent hiring, training, or supervision claim against Kettering Health based on Dr. Sobol's alleged delayed prostate cancer diagnosis. We see no reason why the negligent hiring, training, or supervision claim could not have accrued prior to Genois' death, and the appellants provide no substantive explanation in their cursory argument. Accordingly, the third assignment of error is overruled.

### III. Conclusion

**{¶ 39}** The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J., and HUFFMAN, J., concur.